UNITED STATES DISTRICT COURT
FILED
NOV 07 2008
RODNEY C. EARLY, CLERK
WESTERN DISTRICT OF NY

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA :

:

-v- 08-CR-

:

JOSEPH ANDERSON,

Defendant. : **08 CR 322**

# PLEA AGREEMENT

The defendant, JOSEPH ANDERSON, and the United States Attorney for the Western District of New York (hereinafter "the government") hereby enter into a plea agreement with the terms and conditions as set out below.

## I. THE PLEA AND POSSIBLE SENTENCE

1. The defendant agrees to waive indictment and plead guilty to a one-count Information charging a violation of Title 18, United States Code, Sections 1341, 1346, and 2 [aiding and abetting a public official in a scheme to deprive the City of Niagara Falls and its people of their intangible right to the honest services of a public official], for which the maximum sentence is a term of imprisonment of twenty years, a fine of $250,000, a mandatory $100 special assessment, and a term of supervised release of three

years. The defendant understands that the penalties set forth in this paragraph are the maximum penalties that can be imposed by the Court at sentencing.

2. The defendant understands that, if it is determined that he has violated any of the terms or conditions of supervised release, he may be required to serve in prison all or part of the term of supervised release, up to two years, without credit for time previously served on supervised release. As a consequence, in the event the defendant is sentenced to the maximum term of incarceration, a prison term imposed for a violation of supervised release may result in the defendant serving a sentence of imprisonment longer than the statutory maximum set forth in paragraph 1 of this agreement.

## II. ELEMENTS OF THE CRIME AND FACTUAL BASIS

3. The defendant understands the nature of the offense set forth in paragraph 1 of this agreement and understands that if the case proceeded to trial, the government would be required to prove beyond a reasonable doubt each of the following elements of the crime: a) the defendant aided and assisted another person in devising and executing a scheme; b) the purpose of the scheme was to deprive the City Of Niagara Falls, New York, and its people of their intangible right to the honest services of an elected

official; c) for the purpose of executing the scheme the defendant caused any matter to be sent or delivered by private or commercial interstate carrier; and d) the defendant acted knowingly.

**FACTUAL BASIS**

4. The defendant and the government agree to the following facts, which form the basis for the entry of the guilty plea including relevant conduct:

**a)** At all times referred to in the Information, the defendant, Joseph Anderson, was a businessman and the owner of SMOKIN JOES, a cigarette and gasoline retailer located at 2293 Saunders Settlement Road in Sanborn, New York, in Niagara County.

**b)** The defendant had financial interests in several businesses in and around the City of Niagara Falls, New York, including, for example, the Wintergarden. The Wintergarden was a glass structure located at the west end of the East Pedestrian Mall in the City of Niagara Falls, New York. The East Pedestrian Mall was at all times relevant herein an area approximately two city blocks long extending eastward from the Wintergarden, and ending before the front of the Seneca Niagara Casino, which formerly was the Niagara Falls Convention Center. The East Pedestrian Mall was closed to vehicular traffic.

**c)** In June 2003, Vincenzo Anello was an elected member of the City Council of Niagara Falls, New York. The City Council was the City's legislative body and contained five members. In 2003, Councilman Vincenzo Anello also was a candidate for mayor of the City of Niagara Falls. The City's mayoral election was scheduled for November 2003.

**d)** In June 2003, the defendant was asked by Councilman Vincenzo Anello to loan money to Councilman Anello. This request from Anello was made through another person, who knew both Anello and the defendant well, whereas Anello and Anderson were not close acquaintances. Councilman Anello advised the defendant that he (Anello) had debts relating to his business as an electrical contractor which, if they remained unpaid, would embarrass

Councilman Anello as a candidate for mayor. The defendant and Councilman Anello understood that Anderson's consent to provide money to Anello would enable Anderson to get "inside" and thus enable the defendant to receive favorable consideration in business undertakings from Anello, if Anello was elected as mayor. Councilman Anello advised the defendant that this matter of Councilman Anello's finances could not be the subject of reports in the press.

**e)** On or about June 20, 2003, the defendant approved the issuance of a check drawn on the Fleet bank checking account of Aarow Brokers. The amount of the check was $15,000. This check was provided to Councilman Anello and was made payable to *Anello Electric Construction Company*. Aarow Brokers was a corporation in which Anderson's then-wife, Gail Anderson, was nominally a principal, but whose main purpose was to sign checks that were approved by the defendant. This check was signed for Aarow Brokers by Gail Anderson.

**f)** On or about July 30, 2003, Anderson approved the issuance of another check drawn on the Fleet bank checking account of Aarow Brokers. The amount of this check also was $15,000. This check was provided to Councilman Anello and made payable to *Anello Electric Construction Company*. The check was signed for Aarow Brokers by Gail Anderson.

**g)** On or about November 12, 2003, after Councilman Anello was elected Mayor of the City of Niagara Falls, New York, the defendant approved the issuance of a third Aarow Brokers check for Anello. This third check was for $10,000 and was made payable to *Vincenzo Anello*. The check was signed for Aarow Brokers by Gail Anderson.

**h)** The processing of the aforementioned checks for payment and posting involved the shipment of the checks in interstate commerce by interstate commercial carriers between the States of New York and Connecticut.

**i)** The three payments to Councilman and then Councilman and Mayor-elect Anello, totaling $40,000, were made from the Aarow Brokers account because the defendant and Anello did not want to show the payments as being made from Smokin' Joes to Anello. The payments nominally were loans at zero percent interest, payable on demand.

**j)** On January 1, 2004, Anello began his term as Mayor of the City of Niagara Falls. The defendant was among a group of persons who expressed interest in leasing the East Pedestrian Mall. Obtaining such a lease required approval of a majority of the City Council.

Anello supported the efforts of the defendant's corporation, East Mall Entertainment, to obtain the lease. The lease was proposed by Anello to be awarded to East Mall Entertainment, LLC, without a bidding process, for an initial five-year term during which the annual rent for the first year was $7,500. The proposed lease agreement was, on March 23, 2004, placed on the agenda for the City Council meeting scheduled for March 29, 2004.

**k)** Anello introduced the defendant during the meeting of the City Council on March 29, 2004, and recommended that the proposed lease be approved by the Council. At no time during that meeting, or at any time prior to the meeting, did Anello or the defendant disclose to any member of the City Council that Anello had received the above described $40,000 from the defendant the previous year.

**l)** As of the expiration of Vincenzo Anello's term as Mayor of the City of Niagara Falls on December 31, 2007, the defendant never asked for repayment of the aforementioned money, and no repayment was made.

## III. SENTENCING GUIDELINES

5. The defendant understands that the Court must consider but is not bound by the Sentencing Guidelines.

### BASE OFFENSE LEVEL

6. The government and the defendant agree that Guidelines §2C1.1(a)(2) applies to the offense of conviction and prescribes a base offense level of 12.

### SPECIFIC OFFENSE CHARACTERISTICS

7. The government and the defendant agree that the offense level will be increased by six levels pursuant to Guidelines

Sections 2C1.1(b)(2) and 2B1.1(b)(1)(D), because the value of the payments was greater than $30,000.

8. The government and the defendant agree that the offense level will be increased by four levels pursuant to Guidelines Section 2C1.1(b)(3), because the offense involved an elected public official.

**ACCEPTANCE OF RESPONSIBILITY**

9. At sentencing, the government agrees not to oppose the recommendation that the Court apply the two-level downward adjustment prescribed by Guidelines Section 3E1.1(a) (acceptance of responsibility), and further agrees to move the Court to apply the additional one-level downward adjustment pursuant to Guidelines §3E1.1(b), which would result in a total offense level of 19.

**CRIMINAL HISTORY CATEGORY**

10. It is the understanding of the government and the defendant that the defendant's criminal history category is I. The defendant understands that if the defendant is sentenced for, or convicted of, any other charges prior to sentencing in this case the defendant's criminal history category may increase. The defendant understands that the defendant has no right to withdraw

his guilty plea on account of the Court's determination of the defendant's criminal history category.

**GUIDELINES' APPLICATION, CALCULATIONS AND IMPACT**

11. It is the understanding of the government and the defendant that, with a total offense level of **19** and criminal history category of **I**, the defendant's sentencing range would be a term of imprisonment of **30 to 37** months, a fine of $6,000 to $60,000, and a period of supervised release of two to three years. Notwithstanding this, the defendant understands that at sentencing he is subject to the maximum penalties set forth in paragraph 1 of this agreement.

12. The government and the defendant agree to the Sentencing Guidelines calculations set forth in this agreement, and neither party will advocate or recommend the application of any other Guideline, or move for any Guidelines departure, or move for or recommend a sentence outside the Guidelines, except as specifically set forth in this agreement. A breach of this paragraph by one party will relieve the other party of any agreements made in this plea agreement with respect to sentencing motions and recommendations. A breach of this paragraph by the defendant shall also relieve the government from any agreements to dismiss or not pursue additional charges.

13. The defendant understands that the Court is not bound to accept any Sentencing Guidelines calculations set forth in this agreement, and the defendant will not be entitled to withdraw his guilty plea on account of the sentence imposed by the Court.

## IV. STATUTE OF LIMITATIONS

14. In the event that the defendant's guilty plea is withdrawn, or if his conviction is vacated, either pre- or post-sentence, by way of appeal, motion, post-conviction proceeding, collateral attack or otherwise, the defendant agrees that any charges dismissed pursuant to this agreement shall be automatically reinstated upon motion of the government, and he further agrees not to assert the statute of limitations as a defense to any other criminal offense involving or related to the facts set forth in Section II of this Plea Agreement. This waiver shall be effective for a period of six months following the date upon which the withdrawal of the guilty plea or vacating of the conviction becomes final.

## V. GOVERNMENT RIGHTS AND RESERVATIONS

15. The defendant understands that the government has reserved the right to:

a. provide to the Probation Office and the Court all the information and evidence in its

possession that the government deems relevant concerning the defendant's background, character and involvement in the offense charged, the circumstances surrounding the charge and the defendant's criminal history;

b. respond at sentencing to any statements made by the defendant or on the defendant's behalf that are inconsistent with the information and evidence available to the government; and

c. modify its position with respect to any sentencing recommendation or sentencing factor under the Guidelines including criminal history category, in the event that subsequent to this agreement the government receives previously unknown information regarding the recommendation or factor.

16. The defendant agrees that any financial records and information provided by the defendant to the Probation Office, before or after sentencing, may be disclosed to the United States Attorney's Office for use in the collection of any unpaid financial obligation.

**Waiver of Right to Post Conviction**
**<u>DNA Testing of Physical Evidence</u>**

17. The defendant understands that, pursuant to Title 18, United States Code, Section 3600, he may have the right to request DNA testing of evidence in the possession of the government. As a condition of this agreement, the defendant voluntary waives, for

all purposes, any right to request DNA testing of any such evidence.

## VI. APPEAL RIGHTS

18. The defendant understands that Title 18, United States Code, Section 3742 affords a defendant a limited right to appeal the sentence imposed. The defendant, however, knowingly waives the right to appeal and collaterally attack any component of a sentence imposed by the Court which falls within or is less than the sentencing range for imprisonment, a fine and supervised release set forth in Section III above, notwithstanding the manner in which the Court determines the sentence.

19. The defendant understands that by agreeing not to collaterally attack the sentence, the defendant is waiving the right to challenge the sentence in the event that in the future the defendant becomes aware of previously unknown facts or a change in the law which the defendant believes would justify a decrease in the defendant's sentence.

20. The government waives its right to appeal any component of a sentence imposed by the Court which falls within or is greater than the sentencing range for imprisonment, a fine and supervised release set forth in Section III above, notwithstanding the manner

in which the Court determines the sentence. However, in the event of an appeal from the defendant's sentence by the defendant, the government reserves its right to argue the correctness of the defendant's sentence.

**VII. COOPERATION**

21. The defendant will cooperate with the government by providing complete and truthful information regarding the defendant's knowledge of any and all criminal activity, whether undertaken by the defendant or others, in any way involving or related to the facts set forth in Section II of this agreement. The defendant's cooperation shall also include submitting to interviews by government attorneys and agents, as well as testifying truthfully and completely before grand juries and at such pre-trial and trial proceedings as the government shall deem necessary.

22. The defendant's cooperation shall also be provided to any local, state or federal authorities designated by the government and who have agreed to abide by the terms of the "Cooperation" section of this agreement. The defendant's obligation to testify truthfully and completely shall extend to proceedings in federal, state and local courts in jurisdictions which have agreed to abide by this agreement.

23. In exchange for the defendant's guilty plea and cooperation as set forth in this agreement, the defendant will not be prosecuted by the Office of the United States Attorney for the Western District of New York for any other federal criminal offenses committed in the Western District of New York in any way involving or related to the facts set forth in Section II of this plea agreement, committed up to the date of this agreement and about which the defendant provides complete and truthful information.

24. Further, no testimony, statements or tangible objects provided by the defendant in compliance with this agreement (or any information directly or indirectly derived therefrom) will be used against the defendant in any criminal case, except a prosecution for perjury or making false statements.

25. Upon condition that the defendant has fully complied with all terms and conditions of this agreement, should the government determine that the defendant has provided substantial assistance in the investigation or prosecution of other persons who have committed offenses, the government will move the Court at sentencing to depart downward from the Guidelines by 11 offense levels as provided for in Guidelines § 5K1.1, which, if granted by the Court, would result in a total offense level of 8 and a

sentencing range of 0-6 months imprisonment. The defendant understands that the decision to make such a motion is within the sole discretion of the government and that the decision to grant such a motion, and the extent of any downward departure, are matters solely within the discretion of the Court.

26. This agreement does not preclude the prosecution of the defendant for perjury or making false statements in the event the defendant testifies falsely or provides false information to the government. This agreement is not contingent upon the filing of charges against, the return of an Indictment against, or the successful prosecution of, any person or entity.

27. It is a condition of this agreement that, up through the date of the defendant's sentencing, the defendant shall commit no further crimes. It is also a condition of this agreement that the defendant must, at all times, give complete, truthful and accurate information and testimony and not withhold information from the government or refuse to testify truthfully and completely. Should the defendant be sentenced prior to the completion of the defendant's cooperation with the government, the defendant's obligation to comply with the cooperation provisions of this agreement extends past sentencing.

28. In the event the government believes the defendant has violated any of the conditions in the "Cooperation" section of this agreement, then the government may, before or after sentencing, petition the Court to declare that the defendant has breached this agreement and for an order relieving the government of its obligations under this agreement.

29. Whether or not the defendant has violated any of the conditions of this agreement shall be determined by the Court in an appropriate proceeding at which any disclosures and documents provided by the defendant shall be admissible and at which the government shall be required to establish any violation by a preponderance of the evidence. In order to establish any violation by the defendant, the government is entitled to rely on statements and information given by the defendant pursuant to this agreement.

30. If this agreement is declared breached:

a. the defendant shall thereafter be subject to prosecution for any federal criminal violations of which the government has knowledge, including but not limited to, perjury and obstruction of justice;

b. the government may withdraw any motion filed pursuant to Sentencing Guidelines §5K1.1, Title 18, United States Code, Section 3553(e) and/or Rule 35(b);

c. the defendant has no right to withdraw the guilty plea;

d. the defendant shall waive all rights under Fed. R. Crim. P. 11(f), Fed. R. Evid. 410 and Sentencing Guidelines § 1B1.8 and the defendant expressly agrees that all statements, testimony and tangible objects provided by the defendant (with the exception of statements made in open court during guilty plea proceedings), whether prior or subsequent to this agreement, can be used directly and indirectly in any and all criminal proceedings against the defendant; and

e. the defendant agrees that any charges that were dismissed pursuant to this agreement shall be automatically reinstated upon motion of the government. Furthermore, the defendant agrees not to assert the statute of limitations as a defense to any criminal offense involving or related to the facts set forth in Section II of this plea agreement which is not time barred as of the date of this agreement. This waiver shall be effective for a period of six months following the date upon which the Court's order declaring the agreement breached by the defendant becomes final.

31. At the time of sentencing, the government will make the nature and extent of the defendant's compliance with this agreement known to the Court. The government and the defendant will request that sentencing be adjourned until full satisfaction by the defendant of the terms of this agreement. In the event the defendant is sentenced prior to the completion of the defendant's cooperation with the government, the government reserves the right to modify any recommendation to be made by the government at sentencing pursuant to Guidelines § 5K1.1 and/or Title 18, United States Code, Section 3553(e).

32. The defendant's attorney is permitted to be present at any time the defendant is questioned or interviewed by government agents regarding the matters set forth in this agreement.

## VIII. TOTAL AGREEMENT AND AFFIRMATIONS

33. This plea agreement represents the total agreement between the defendant and the government. There are no promises made by anyone other than those contained in this agreement. This agreement supersedes any other prior agreements, written or oral, entered into between the defendant and the government and the defendant.

TERRANCE P. FLYNN
United States Attorney
Western District of New York

BY: [signature]
PAUL J. CAMPANA
Assistant U. S. Attorney

Dated: November 7, 2008

I have read this agreement, which consists of 17 pages. I have had a full opportunity to discuss this agreement with my attorney. I agree that it represents the total agreement reached between myself and the government. No promises or representations have been made to me other than what is contained in this agreement. I understand all of the consequences of my guilty plea. I fully agree with the contents of this agreement. I am signing this agreement voluntarily and of my own free will.

JOSEPH ANDERSON
Defendant

Dated: 11/7, 2008

TERRENCE M. CONNORS, ESQ.
Attorney for the Defendant

Dated: 11/7, 2008